**DELHI-TAYLOR OIL CORPORATION,**
Appellants,

v.

**A. W. GREGG et al., Appellees.**

No. 10773.

Court of Civil Appeals of Texas.

Austin.

June 15, 1960.

Rehearing Denied July 13, 1960.

See also Tex.Civ.App., 337 S.W.2d 222.

Charles E. Thompson, McAllen, Turner, White, Atwood, McLane & Francis, C. Sidney McClain, Dallas, Clark, Mathews, Thomas, Harris & Denius, Austin, A. W. Walker, Jr., Dallas, F. E. Butler, McAllen, for appellants.

William H. Darden, Corpus Christi, Tom G. Oliver, Jr., Ernest Morgan, San Marcos, Ewers, Toothaker, Ewers, Elick, Jones & Abbott, William E. York, McAllen, Hart & Hart, Austin, for appellees.

GRAY, Justice.

This suit was filed by appellants, Delhi-Taylor Oil Corporation and Mayfair Minerals, Inc., against A. W. Gregg, John W. Voss Drilling Company, Inc., and Stephen Warden. The cause was dismissed as to all defendants except A. W. Gregg who is appellee here.

Appellants' suit was first filed in the district court of Hidalgo County and it was transferred to the district court of Hays County on appellee's plea of privilege.

For the purpose of this opinion it may be said that appellee is the owner of an oil and gas lease on a .42 acre tract of land in the City of Pharr, Hidalgo County. This tract is known and will be referred to as the Warden tract. Its width from east to west is 75 feet. Appellants own oil and gas leases on lands surrounding the Warden tract. Appellee is drilling, or now has drilled, a well on his tract which well is located 37½ feet from appellants' lease on the east and 80 feet from their lease on the south.

Appellants alleged that appellee's well would be drilled to, or completed in, the Hansen sand, a gas producing sand which underlies appellee's and appellants' leases; that he intends to complete said well in said sand and to use a fracturing process which will effectively create crevices or channels in said gas bearing sand underlying appellants' leases and thereby permit appellee to produce gas from appellants' lands which gas he could not produce under the law of capture without committing the alleged trespass. Appellants' allegations as to the Hansen sand are that:

"Said sand is hard and fairly tight in its natural state, but has proven in numerous other wells to be readily susceptible of and responsive to what is known as 'fracturing.' Fracturing is a process by which sand is mixed with a liquid and that liquid in large quantities is forced back into the structure under very high pressure. This operation opens up veins in the formation and simultaneously the sand which is suspended in the liquid is carried back into the structure and effectively props it open."

Appellants prayed that appellee be enjoined:

"from the use of sand and other fracturing material under pressure which would force such material out beyond

the limits of Defendants' lease; from using any and all techniques and/or materials which would physically invade the subsurface of Plaintiffs' premises surrounding the well in question; and from creating channels, cracks or fissures in Plaintiffs' subsurface land and which would permit production by Defendants' well of hydrocarbons underlying Plaintiffs' lands which Defendants are not entitled to produce even under the law of capture."

In his answer appellee among other things urged a plea in abatement wherein he asserted that:

"The Railroad Commission of Texas has been vested by the Legislature of the State of Texas with exclusive power and jurisdiction over all oil and gas wells in the State of Texas and over all persons, associations and corporations owning or engaged in drilling or operating oil and gas wells in Texas, and said Commission has been granted the power and jurisdiction to make and enforce rules, regulations or orders for the conservation of oil and natural gas and to prevent the waste thereof, to protect correlative rights, and to 'require wells to be drilled and operated in such manner as to prevent injury to adjoining property.' That said Commission has approved the method of fracturing referred to and described in Plaintiffs' alleged cause of action and which is accepted as good practice in completing oil and gas wells in certain formations to prevent waste. That the proper and necessary forum to determine whether the alleged fracturing process, and used throughout the State of Texas, will cause damage to Plaintiffs' adjoining leases, is before said Railroad Commission. Plaintiffs' primary remedy on such an important and far-reaching matter as this should have been brought before said Commission."

He asserted that the primary jurisdiction to determine the question presented by appellants is in the Railroad Commission (later referred to as the Commission) because the issue is whether the fracturing method of completing appellee's well will injure appellants' property.

Appellee further asserted that appellants' cause of action should be abated because their petition for injunctive relief does not meet the requirements of art. 4644, Vernon's Ann.Civ.St.

The plea in abatement was sustained by the trial court and the cause was dismissed. The judgment recites that:

"* * * the court is of the opinion that the Railroad Commission of Texas has primary jurisdiction of the matters at issue in this case and that this court does not have jurisdiction thereof and that said plea in abatement should be sustained."

Evidence was not heard on the plea in abatement. However the parties stipulated that on December 9, 1959 the Commission held a hearing on the request of appellants and other operators in the field for the adoption of rules for the Hansen Sand Reservoir including a rule permitting sand fracturing of a named maximum treatment to be used in the Hansen sand and providing for exceptions to said rule.

At the time of the trial the Commission had not acted on the above request and had not adopted rules for the Hansen sand.

The judgment sustaining the plea in abatement was rendered January 11, 1960. Subsequent to that judgment appellants filed with the Commission an application for an order prohibiting appellee from sand fracturing *his well*. A majority of the Commissioners refused the order and assigned as a reason for such refusal that "fracturing is a standard practice." The action if any of the third Commissioner on the application is not shown.

Based on the above application by appellants appellee has filed a motion to dis-

miss this appeal. However in oral argument appellee stated he would not insist on his motion to dismiss because, as we understood him, his brief contains a counterpoint presenting the question. In view of the above statement the motion will be disposed of by our disposition of appellee's counterpoint.

Appellants' one point is to the effect that the trial court erred in sustaining the plea in abatement on the ground that it had no jurisdiction to try the issue presented and in holding that the Commission has primary jurisdiction of the matters in issue.

Appellee's first counterpoint joins issue with appellants on the question of jurisdiction and his second is to the effect that by applying to the Commission for relief after rendition of the judgment by the trial court appellants elected their remedy and are relegated to an appeal from the Commission's refusal of their request for relief and for which reason the judgment of the trial court should be affirmed or the appeal dismissed.

We are here concerned only with the question of whether the trial court had jurisdiction to hear and determine appellants' petition for relief and not whether such relief should be granted or denied nor whether the Commission has jurisdiction to grant relief.

■ The duty of enforcing oil and gas conservation laws is vested in the Commission and it is given authority to make rules and regulations for such purpose. Some of the provisions of art. 6029, Vernon's Ann.Civ.St., are pertinent to our inquiry here. It provides:

"The Commission shall make and enforce rules, regulations or orders for the conservation of crude petroleum oil and natural gas and to prevent the waste thereof, including rules, regulations or orders for the following purposes: * * *

" (4) To require wells to be drilled and operated in such manner as to prevent injury to adjoining property.

*   *   *   *   *   *

" (6) To establish rules and regulations for shooting wells and for separating crude petroleum oil from natural gas."

Referring to the above quoted portion of appellee's plea in abatement it appears that sec. (4) supra is applicable since it is asserted that appellee's threatened act will cause injury to adjoining property. Appellants' complaint is that if appellee is allowed to sand fracture the Hansen sand the result will be that gas from under appellants' leases will flow to appellee's lease and will be produced by him.

■ Appellee's well, so far as we know, has been drilled under a valid permit and he is entitled to produce his fair share of the gas in the reservoir underlying his lease. This fair share and its inclusion of the right of capture is not for determination in our inquiry here but the amount thereof is to be determined by the Commission allocating to the well its allowable production. Appellants say that if appellee is permitted to sand fracture the Hansen sand he will gain a production advantage. As applicable to this contention we quote from Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 944, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393:

"The commission, in order to prevent waste, has the power to limit the rate of flow in the same way that it has the power to regulate spacing. See Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; Danciger Oil & Refining Co. v. Railroad Commission (Tex.Civ.App.) 49 S.W. 2d 837. This right to control the rate of flow in order to prevent waste also enables the commission to offset the advantage obtained by one who is given an exception to the spacing rule by limiting his allowable production to the extent necessary to overcome this advantage. In this way the commission, by controlling the oil stored in

the common reservoir, is enabled to carry out the dominant purpose of preventing waste, and, at the same time, permit each owner to enjoy the opportunity fully to realize upon his estate by developing and recovering his oil and gas."

In the above case the court considered the ownership of oil and gas in place and said:

"The rule in Texas recognizes the ownership of oil and gas in place, and gives to the lessee a determinable fee therein. (Citing authorities.)

"Owing to the peculiar characteristics of oil and gas, the foregoing rule of ownership of oil and gas in place should be considered in connection with the law of capture. This rule gives the right to produce all of the oil and gas that will flow out of the well on one's land; and this is a property right. And it is limited only by the physical possibility of the adjoining landowner diminishing the oil and gas under one's land by the exercise of the same right of capture."

■ If it be argued that the above quotes are not decisive of the question of jurisdiction here presented it is to be observed that they establish two relevant facts to our inquiry. These are: (1) the power of the Commission to require wells to be operated in a manner to prevent injury to adjoining property by limiting the allowable production of wells, and (2) the right to produce all of the oil or gas that will flow out of a well on a person's land is a property right. The first is of course applicable only when the Commission comes to assign an allowable to the well but the second is applicable to appellants' pleading here. They allege that appellee is:

"contemplating, planning to, and will, unless restrained by order of the Court, utilize the techniques referred to above, which will consist of one or more processes of acidation and fracturing

of the formation, thereby stimulating excessive and unnatural production from reserves adjoining their lease, but actually under Plaintiff's leases, with the result that Defendants will produce hydrocarbons presently in place under tracts which are covered by valid and subsisting oil, gas and mineral leases owned by Plaintiffs and which hydrocarbons Plaintiffs own and have the exclusive right under their leases to recover and produce and to which Defendants have no rights."

The above allegations raise a question of rights to property vested in appellants—the gas underlying their leases—and of damages thereto because of a trespass resulting in a continuing lessening or, by taking, subtracting from the supply of such gas. 24–A Tex.Jur. p. 129, sec. 72 and sec. 91, p. 158. These citations support appellants' contention that the trial court had jurisdiction to determine their application for injunctive relief. However we are immediately confronted with the provisions of art. 4644 supra which we quote:

"No injunction or temporary restraining order shall ever be issued prohibiting sub-surface drilling or mining operations on the application of an adjacent land owner claiming injury to his surface or improvements or loss of or injury to the minerals thereunder, unless the party against whom drilling or mining operations is alleged as a wrongful act is shown to be unable to respond in damages for such injury as may result from such drilling or mining operations; provided, however, that the party against whom such injunction is sought shall enter into a good and sufficient bond in such sum as the judge hearing the application shall fix, securing the complainant in the payment of any injuries that may be sustained by such complainant as the result of such drilling or mining operations. The court may, when he deems it necessary to protect the in-

terests involved in such litigation, in lieu of such bond, appoint a trustee or receiver with such powers as the court may prescribe, to take charge of and hold the minerals produced from the lands of those complained against or the proceeds thereof subject to the final disposition of such litigation."

Clearly appellants say that, unless restrained, appellee will take gas from beneath their lands by the sand fracturing method.

The question then is not one of restraining the production of appellee's well but it is a question of restraining a threatened act of appellee which it is alleged will violate a property right of appellants—their ownership of the gas in place under their lands. See 31–A Tex.Jur. p. 24, Sec. 5.

In Hastings Oil Co. v. Texas Co., 149 Tex. 416, 234 S.W.2d 389, 397, the court considered the history, the purpose and the intent of art. 4644 supra. There the two companies owned oil and gas leases on adjoining tracts of land. The appeal was from an order granting the Texas Company a temporary injunction which it may be generally said, restrained Hastings from directionally deviating a well bore from the vertical in such manner as to cause the well to be drilled into the subsurface of the Texas Company's lease. It was contended that the order appealed from violated art. 4644 supra. The court said:

"* * * the article was intended to refer to one taking oil from his own land, not to one taking oil from the land of the adjoining owner by means of a deviated well. Therefore we hold that Art. 4644 is no bar to injunctive relief in behalf of respondents."

The only difference in the facts of the above case and the facts here is the method of taking gas, rather than oil, from the land of an adjoining owner. The application of the statute to the facts presents the same question.

It is our opinion that the trial court had jurisdiction to hear and determine appellants' petition for injunctive relief, that it was error to sustain appellee's plea in abatement and dismiss the cause, and that art. 4644 supra is not a bar to the granting of injunctive relief in this cause.

Appellee's second counterpoint presents a question of election of remedies. In order for there to have been an election appellants must have had available more than one remedy.

Appellants applied to the Commission for relief after the trial court entered its judgment that it was without jurisdiction and the Commission declined to take any action. Apparently this ended appellants' efforts before the Commission and they have prosecuted this appeal. In our opinion appellants' action in going to the Commission does not constitute an election. Kiel v. Staber, Tex.Civ.App., 116 S.W.2d 809. Error refused. Appellants received no benefit by going before the Commission and appellee suffered no loss or detriment and such action, we think, does not constitute an election. 15–B Tex.Jur. p. 343, Sec. 11. Their action in so doing was only an effort to conserve their rights under the trial court's judgment if it became final. The action "was but another evidence of diligence on the part of * * * counsel to conserve, if possible, * * * legal rights under any and all circumstances." Smith v. Patton, Tex.Com.App., 241 S.W. 109, 116.

Appellee's second counterpoint and his motion to dismiss this appeal are both overruled.

It is our opinion that the trial court erred in dismissing appellants' cause. Accordingly the judgment is reversed and the cause is remanded with instructions that it be reinstated on the docket for a trial on its merits.

Reversed and remanded with instructions.